UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:02-CV-469

| | |
|---|---|
| ASIA APPAREL CO., LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| GARRETT CUNNEEN and STORM ) | |
| JENKINS, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court upon Plaintiff's "Motion to Dismiss Specified Claims Without Prejudice and for Summary Judgment of Claims Remaining" (Document #169). Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, Plaintiff moves the Court for voluntary dismissal without prejudice of all claims in this action except for defamation per se as against Defendant Jenkins (Claim 1), declaratory judgment of an implied, nonexclusive license (Claim 6) and registered trademark infringement (Claim 7).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff moves for summary judgment of the three claims remaining.

Plaintiff's claims (except for the three mentioned) are hereby dismissed without prejudice and for the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED.

**I. BACKGROUND**

Initially instituted to prevent Defendants Cunneen and Jenkins ("Defendants") from

interfering with Plaintiff Asia Apparel Co., LLC. ("Asia") and its customers concerning a trademark issue, this action has undergone several transformations in form and substance, including the addition of claims arising from Plaintiff's purchase of Defendants' bankrupt business, RIPSwear. On September 17, 2004, this Court entered a preliminary injunction barring Defendants from commercial interference with Plaintiff's customer relations and directing Defendants to turn over use of the www.rips.com website and affiliated email addresses to Plaintiff. On Plaintiff's own motion, the opinion also directed Plaintiff to file a proposed supplemental complaint. Defendants immediately appealed.

Defendants' appeal was denied by an unpublished opinion of the Fourth Circuit on January 13, 2005. During the pendency of the appeal, Defendants filed two identical motions to dismiss. Plaintiff failed to respond to either, and failed to file its supplemental complaint as directed. On May 20, 2005, Plaintiff's attorney sought to withdraw, stating, among other reasons, that Plaintiff evidenced no intent to go forward with the action. Defendants filed a third motion to dismiss, this time for failure to prosecute, on August 22, 2005. The Court granted Defendants' motion and dismissed this action with prejudice on September 15, 2005. The Court vacated this order, however, in a subsequent Order to Vacate, published on December 13, 2005. In that Order, the Court acknowledged that at no point did the Court directly inform Plaintiff that their case was in danger of dismissal, and that the Plaintiff never violated a direct court order, aside from the ministerial step of properly filing its supplementary complaint.

Over the three-year course of this litigation, Plaintiff has shown every indication of succeeding on the merits of its case, including having its preliminary injunction affirmed by the Fourth Circuit.

The record before the Court on the preliminary injunction proceeding concerning the rips.com domain name demonstrated that Asia has succeeded to ownership of the federally registered trademark, RIPS, used in conjunction with the sale of clothing. Also, the record shows that the Defendants acknowledged they were then in control of the rips.com domain name and had replaced the RIPS underwear promotional website at with a page promoting "RIPS Entertainment." While promoting RIPS Entertainment, the web site made reference to "underwear" and the Defendant's unsuccessful litigation with Asia.

Defendants have filed thirty-two motions in this case (as opposed to eighteen by the Plaintiff) and have been declared "vexatious litigants" in a parallel action in California state court. Immediately following the Court's order of dismissal, Defendants began an email campaign against Plaintiff, inaccurately declaring resolution of the trademark issue in their favor and threatening further litigation unless their demands were met.

## II. DISCUSSION

Summary judgment is proper "if the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has met the initial burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. Celotex, 477 U.S. at 323. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Pursuant to Rule 56(e), after "a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading," rather "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. C. P. 56(e); Anderson, 477 U.S. at 250. This standard is particularly important where the nonmoving party bears the burden of proof. Hughes v. Bedsole, 48 F.3d. 1376, 1381 (4th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249-50. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff. Id. at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. Austin v. Clark Equip. Co., 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted). However, in reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore, only "give credence to the

evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151.

### A. Trademark Infringement

To prove trademark infringement, Asia must show (1) that it owns a valid and protectable mark; (2) that Defendants used a "re-production, counterfeit, copy, or colorable imitation" of that mark in commerce and without Asia's consent; and (3) that the Defendants' use is likely to cause confusion. Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252 (4th Cir. 2007).

#### 1. Ownership of the RIPS Mark

Under 15 U.S.C. §1057(b), the Lanham Act provides presumptive ownership of trademarks to those holding certificates of registration. *See, e.g.*, Gibraltar, P.R., Inc. v. Otoki Group Inc., 104 F.3d 616, 619 (4th Cir. 1997) (citing Brittingham v. Jenkins, 914 F.2d 447, 452 (4th Cir. 1990).

Here, Asia has registered the RIPS trademark. Therefore, under the Lanham Act, Asia enjoys presumptive ownership of the RIPS trademark, a valid and protectable mark.

#### 2. Defendants' Use of the RIPS Mark In Commerce Without Asia's Consent

Despite Asia's registration of the RIPS trademark, Defendants continued to use and operate an Internet domain, rips.com, that is identical to Asia's registered mark. The Defendants used this Internet domain to promote and advertise their new company, RIPS Entertainment. While RIPS Entertainment does not produce a product in competition with RIPS underwear, the

RIPS trademark is prevalent in the Defendants' new business title.

In the September 2004 preliminary injunction order, this Court found that Defendants' new venture, RIPS Entertainment, appears to have been a pretext to retain control over the rips.com domain.

While the Defendants have revised rips.com several times, the Internet domain has expressly mentioned RIPS underwear in order to promote RIPS Entertainment. Specifically, rips.com identified the creators of RIPS Entertainment as the people who "brought you RIPS underwear."

Through the rips.com Internet domain, the Defendants used the RIPS trademark and referenced RIPS underwear to promote and support a commercial good, their new venture. Defendant's used the RIPS trademark in commerce and without Asia's consent.

### 3. Customer Confusion Caused by Defendants' Use of the Mark

Under the Lanham Act, a competitor is forbidden from "luring potential customers away from a producer by initially passing off its goods [or services] as those of the producer's even if confusion as to the source of the goods is dispelled by the time any sales are consummated." Rust Environment & Infrastructure, Inc. v. Teunissen, 131 F.3d 1210, 1217 (7th Cir. 1997). Initial interest confusion is "every bit as actionable as if plaintiff had proven that it will actually lose sales." Sara Lee Corp. v. Kayser-Roth Corp., 1992 WL 436279 (M.D.N.C. 1992); *see also* Lamparello v. Falwell, 420 F.3d 309, 316-17 (4th Cir. 2005) (initial interest confusion liability is applicable where domain name and site content together give rise to confusion and opportunity to profit financially from confusion). The Court should look to how the two parties actually use their marks in the marketplace to determine whether the Defendants' use is likely to cause

6

confusion.  What-A-Burger of Va., Inc. v. Whataburger, Inc., 357 F.3d 441, 450 (4th Cir. 2004).

In People for Ethical Treatment of Animals v. Doughney, the Court found that users of the website could have been confused due to the defendant's use of a domain name that is identical to the plaintiff's trademark.  263 F.3d 359, 365 (4th Cir. 2001).  The plaintiff owned the registered trademark PETA.  PETA, 263 F.3d at 365.  The defendant owned the domain name peta.org.  Id. at 365.  The Court held that prospective users of the plaintiff's services who mistakenly access the defendant's web site may fail to continue to search for the plaintiff's own home page, due to anger, frustration, or the belief that the plaintiff's home page does not exist.

Here, like in PETA, the Defendants own a domain name that is identical to Asia's trademark.  Prior to the Defendants' use of rips.com to promote RIPS Entertainment, the webs site was used for the marketing of underwear bearing Asia's trademark.  Potential RIPS underwear customers may visit rips.com and become angry, frustrated and confused when they are unable to find information about or purchase RIPS underwear from the web site.  Furthermore, by referring to the creators of RIPS Entertainment as the people who "brought you RIPS underwear," the web site may confuse users as to the existence of RIPS underwear.  The Defendants are able to promote their new venture by capitalizing on the potential RIPS underwear customer confusion over the rips.com domain name and the web site's content.

### 4. Permanent Injunction

A presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion.  Scotts Co. v. United Industries Corp., 315 F.3d 264, 273 (4th Cir. 2002); *see also* Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 469 (7th Cir.2000) ("Irreparable harm is generally presumed in cases of trademark infringement and

7

dilution."); Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2nd Cir.1997) ("In the context of trademark and unfair competition injunctions, the requirement of irreparable harm carries no independent weight, as we have held that a showing of likelihood of confusion (a requirement of both trademark infringement and unfair competition claims) establishes irreparable harm."). Under 15 U.S.C. § 1116, this Court has the explicit authority to make permanent a preliminary injunction.

As stated above, this Court has found that Asia demonstrated that the rips.com web site is likely to cause initial interest confusion to web site users. Based on this confusion, the Court presumes Asia has suffered irreparable injury.

THEREFORE IT IS HEREBY ORDERED that:

1. Defendant Jenkins and Cunneen shall not use, maintain or transfer except as ordered the domain name rips.com;

2. Defendant Jenkins and Cunneen shall facilitate the transfer of control of the rips.com domain name to Asia Apparel Co., LLC, including any of the following actions as may be requested by Asia: (1) responding affirmatively to the domain name registrar's request for consent to the transfer; or (2) by furnishing to counsel for Asia any administrative access user names, passwords and other information necessary to alter the WHOIS record to reflect that Asia is the registrant and to redesignate the IP address associated with the domain name to one subject to Asia's control;

3. Within two days of taking control of the risp.com domain, Asia shall arrange to forward automatically to email addresses designated by Defendants all emails addressed to storm@rips.com or garrett@rips.com.

### B. Declaratory Judgment and Libel Per Se

The issues of declaratory judgment and libel per se turn on whether Asia infringed a copyright of RIPSwear by using photos, purchased from RIPSwear, on packaging for underwear manufactured for Marshalls' private brand. The Court finds that Asia holds an implied, nonexclusive license to use the Marshalls Box Photos. Therefore, Asia is entitled to a declaratory judgment as to the existence of an implied, nonexclusive license to use the Marshalls Box Photos. Furthermore, Asia is entitled to permanent injunctive relief against Defendants' repeated libelous conduct.

#### 1. Declaratory Judgment of an Implied, Nonexclusive License

An implied nonexclusive license is created when "(1) a person (the licensee) requests the cration of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee copy and distribute his work." Nelson-Salabes, Inc. v. Morningside Development, LLC, 284 F.3d 505, 514 (4th Cir. 2002) (citing Effects Associates, Inc. v. Cohen, 908 F.2d 555 (9th Cir. 1990). More specifically, courts have interpreted the third prong to mean that the creator must intend that the protected work be sued on the project for which it was created, independent of the creator's involvement. Nelson-Salabes, 284 F.3d at 515. Implied, nonexclusive licences, unlike transfers of copyrights, may be given either orally or implied from conduct. Nelson-Salabes, 284 F.3d at 514. Furthermore, courts have granted implied, nonexclusive licenses of copyrighted works under a summary judgment analysis. *See, e.g.*, Food Consulting Group, Inc. v. Musil Govan Azzalino, 270 F.3d 821, 832 (9th Cir. 2001); I.A.E., Inc. v. Shaver, 74 F.3d 768, 778 (7th Cir. 1996); Effects Associates, 908 F.2d at 555.

In <u>Foad Consulting</u>, the Court found that an implied, nonexclusive contract existed between plaintiff (licensee) and defendant (licensor). 270 F.3d at 828. The defendant requested that the plaintiff produce a set of engineering documents for a commercial center and help the defendant with the building application. <u>Id.</u> The defendant agreed to pay the plaintiff a large sum of money for the documents. <u>Id.</u> The Court found, due to the large sum of money paid to the plaintiff and the agreement to aid defendant in the building application, that if plaintiff intended the defendant to ask permission to use the documents in the building project it should be explicit within the contract. <u>Id.</u> at 829. Based on the lack of this explicit provision, the Court held the defendant held an implied license to used the documents in building the commercial center. <u>Id.</u> at 829.

It is clear that Asia requested the creation of the Marshalls Box Photos and Defendants made and delivered the photographs to Asia. These points are not in contention. Here, like in <u>Foad Consulting</u>, Asia requested that the Defendants produce the Marshalls Box Photos for which Asia payed $7,200. In a correspondence with Asia's president, the Defendants identified a similar underwear packaging photo shoot for Kenneth Cole and indicated that Asia would save a "significant amount of money" by hiring the Defendants to produce the Marshalls Box Photos. In expressing their willingness to create the photographs, the Defendants failed to expressly reserve any rights to the photographs nor did they communicate that additional consideration would be required before Asia could use the photographs. Like <u>Foad Consulting</u>, if the Defendants intended Asia to ask permission to use the Marshalls Box Photos they would have made it explicit in their correspondence. Furthermore, in the correspondence between the Defendants and Asia's president, the Defendants indicate that they are willing to "spec, cast,

photograph and do the postproduction work" on the Marshalls Box Photos. If the Defendants wanted to limit Asia's ability to use the Marshalls Box Photos, it seems only logical that they would identify the specific requirements for use in the correspondence that explicitly detailed what services Asia would be receiving from the Defendants.

Accordingly, the Court finds that Asia possesses an implied, nonexclusive license to use the Marshalls Box Photos.

### 2. Libel Per Se

North Carolina has long recognized publications that are obviously defamatory are a category of libel termed libel per se. *See, e.g.*, Ellis v. Northstar Co., 326 N.C. 219, 223 (1990); Flake v. News Co., 212 N.C. 780, 785 (1938). A publication is libelous per se, if, when considered without innuendo, the publication tends to impeach one in his trade or profession. *See, e.g.*, Ellis, 326 N.C. at 224; Flake, 212 N.C. at 787. "When a publication is libelous per se, a prima facie presumption of malice and a conclusive presumption of legal injury arise entitling the victim to recover at least nominal damages without special proof of special damages." Hanton v. Gilbert, 126 N.C.App. 561, 567 (1997) (quoting Arnold v. Sharpe, 296 N.C. 533, 537-38 (1979)).

Here, Defendant Jenkins published accusations that Asia had used the Marshalls Box Photos without asking the permission of Defendant Jenkins. Defendant Jenkins published these accusations to Asia's customers and contract sales representative. Because Asia possessed an implied, nonexclusive license to use the Marshalls Box Photos, Defendant Jenkins' accusations rise to the level of libelous per se.

Accordingly, the Court hereby issues a permanent injunction against the Defendants.

Storm Jenkins and Garrett Cunneen shall not initiate any further written or oral communications concerning Asia Apparel Co., LLC, its managers, agents or employees to any party in a contract relationsihp with Asia Apparel Co., LLC, including its customers, lenders, independent contractors and employees, except for any attorney representing Asia Apparel Co., LLC.

    IT IS SO ORDERED.

Signed: July 30, 2008

Graham C. Mullen
United States District Judge